UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EUGENE EDWARD MOORE,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>KASHIF ALI, et al.,<br><br>　　　　Defendants. | No. 2:19-cv-0332 KJN P<br><br><br>ORDER |

Plaintiff is a state prisoner, proceeding pro se. Plaintiff's motion to reinstate this action following his voluntary dismissal is before the court. As discussed below, plaintiff's motion is denied without prejudice to its renewal.

I. Background

Plaintiff is presently housed at a Conservation Fire Camp, TRCC#3, in Lewiston, California. At the time he filed this action, plaintiff was housed at the California Correctional Center ("CCI") in Susanville. (ECF No. 1 at 3.) On March 25, 2019, this action was dismissed pursuant to plaintiff's request for voluntary dismissal.

On May 23, 2019, plaintiff filed a motion to reinstate his complaint.[1] In addition, he asks the court to order "previous Doe defendants, now Suzanne Peery, J. Randall, and R. Martinez," to

---

[1] Plaintiff also included a motion for temporary restraining order, which he renewed again on May 30, 2019. These motions are separately addressed.

reinstate plaintiff's January 12, 2020 release date, advancing the release date from March 5, 2020. (ECF No. 6 at 3, 9.) Plaintiff notes that he was returned to camp on March 28, 2019, but his release date was not changed. (ECF No. 6 at 3.) Finally, plaintiff seeks leave to amend his complaint to update his claims with his most recent events.

II. Plaintiff's Complaint

Plaintiff alleges, *inter alia*, that without plaintiff's knowledge or consent, defendants updated plaintiff's medical records to state he has seizures: (a) despite no current evidence that plaintiff suffers from a seizure disorder or has been prescribed medication for the same;[2] (b) despite the fact that seizure precautions were removed from plaintiff's records on July 12, 2018; and (c) despite plaintiff refusing medical treatment by signing a refusal of treatment form. Defendants' actions resulted in plaintiff being returned prematurely from, and delayed in his transfer to, a fire camp where he can earn more time credits and make a higher salary, and ultimately resulting in his prison release date being extended beyond January 12, 2020. (ECF No. 1 at 10, 17, 21.) In addition, medical records demonstrate plaintiff has been free from pharmacological intervention for 18 months, also making him eligible for fire camp. Thus, defendants are employing "underground regulations" in violation of prison regulations, because the "CCC Clinical Camp Guidelines" are merely a Microsoft word document devoid of any legal citation or signature, not adopted by the California Office of Administrative Law, and therefore unenforceable. (ECF No. 1 at 12.) If the court does not issue a temporary restraining order requiring defendants to remove the medical hold, immediately release plaintiff to fire camp, and correct his prison release date to January 12, 2020, his prison release date may be threatened.

In his first cause of action, plaintiff claims his Fourteenth Amendment due process rights have been violated by defendants imposing unwanted medical treatment on him without his consent, and depriving him of his right to refuse medical treatment, and violating his right to privacy in his medical records. In his second cause of action, plaintiff appears to allege that

---

[2] In 2010, plaintiff admitted to prison staff that he lied about having a seizure disorder in 2010 to receive a lower bunk, and was released from prison in December 30, 2014. (ECF No. 1 at 5.) Despite such admission in 2010, following his reincarceration, the seizure precautions were not lifted from his medical records until July 12, 2018.

2

defendants retaliated against plaintiff in violation of the First Amendment by providing inaccurate responses to, and falsely denying, plaintiff's administrative appeals, imposing invalid guidelines, and making retaliatory threats against plaintiff. In addition to declaratory relief and monetary damages, plaintiff seeks injunctive relief requiring defendants Ali and Villa to stop imposing an underground regulation, the "CCC Clinical Camp Guidelines," remove the medical hold and clear plaintiff for "full duty special skills *nunc pro tunc* from . . . August 13, 2018, to only follow valid CCHCS/CDCR policies and procedures, honor plaintiff's right to refuse treatment, right to informed consent, privacy rights, and to not retaliate against plaintiff for filing this complaint, and send [plaintiff] back to Trinity River Conservation Camp #3." (ECF No. 1 at 28.)

III. Standards

A voluntary dismissal is a judgment, order, or proceeding from which Rule 60(b) relief can be granted. In re Hunter, 66 F.3d 1002, 1004 (9th Cir. 1995). Under Rule 60(b) a court may relieve a party from a final judgment or order if the moving party can show: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud, misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; or (6) any other reason that justifies relief. Fed. R. Civ. P. 60(b) (hereafter "Rule 60(b)).

IV. Discussion

Plaintiff fails to address the element of Rule 60(b) that he believes demonstrates that this action should be reopened. Rather, most of his motion is devoted to reiterating allegations from 2018 which were included in his original complaint. Because those facts were known to plaintiff at the time he dismissed this action, such facts offer no support for reopening this case. The undersigned finds that plaintiff has failed to procedurally comply with Rule 60(b). Therefore, plaintiff's motion to reinstate this action is denied without prejudice to plaintiff renewing his motion under Rule 60(b).

Further, plaintiff now claims his circumstances have changed, including his transfer back to the fire camp, which was part of the relief he sought. Plaintiff also seeks to substitute for Doe defendants the individuals Suzanne Peery, J. Randall, and R. Martinez, who were not named in

his complaint. However, in his complaint, plaintiff did not identify each Doe defendant by his or her alleged act or omission which plaintiff contends violated his constitutional rights. Absent such factual allegations, plaintiff may not simply substitute the name of an individual because it is insufficient to put each putative defendant on notice of the alleged actions or omissions that plaintiff claims violated his federal rights.[3] Rather, plaintiff must seek leave to amend his complaint to name such individuals as defendants, and append a proposed amended complaint that includes the requisite factual allegations, for the court's screening.[4]

Finally, although plaintiff offers to amend his complaint, in light of plaintiff's allegations, it is unclear he can state a cognizable civil rights claim or raise a claim that is not barred under Heck v. Humphrey, 512 U.S. 477, 482, 486-87 (1994). Often referred to as the favorable termination rule or the Heck bar, this exception to Section 1983's otherwise broad scope applies whenever state prisoners "seek to invalidate the duration of their confinement -- either directly through an injunction compelling speedier release or indirectly through a judicial determination that necessarily implies the unlawfulness of the State's custody." Wilkinson v. Dotson, 544 U.S. 74, 81 (2005); Heck, 512 U.S. at 482, 486-87; Edwards v. Balisok, 520 U.S. 641, 644 (1997). Thus, "a state prisoner's [section] 1983 action is barred (absent prior invalidation) -- no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state

---

[3] The use of Doe defendants is problematic, see Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980), and ultimately unnecessary. Rule 15 of the Federal Rules of Civil Procedure, not state law "Doe" pleading practices, governs whether new defendants may be added and if so, whether the claims against them would relate back to the filing of the initial complaint. Once a plaintiff learns the identities of the "Doe" parties sought to be served, a plaintiff must promptly move pursuant to Rule 15 to file an amended complaint to add them as defendants, and provide the proposed amended pleading. See Brass v. County of Los Angeles, 328 F.3d 1192, 1197-98 (9th Cir. 2003). If the timing of the amended complaint raises questions as to the statute of limitations, a plaintiff must satisfy the requirements of Rule 15(c), which is the controlling procedure for adding defendants whose identities were discovered after commencement of the action. Also, unknown persons cannot be served with process until they are identified by their real names. The court will not investigate the names and identities of unnamed defendants.

[4] The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

conduct leading to conviction or internal prison proceedings) -- if success in that action would necessarily demonstrate the invalidity of confinement or its duration." Id. at 81-82.

Because plaintiff seeks a court order advancing the date he is released from prison, a claim which necessarily implicates the duration of his confinement, plaintiff must seek relief through a petition for writ of habeas corpus, under 28 U.S.C. § 2254.

However, plaintiff may be able to state claims that do not implicate his release date; thus, plaintiff is granted leave to submit a proposed amended complaint. Plaintiff should review the following information to determine whether he can state a cognizable federal civil rights claim that is not barred by Heck.

V. Governing Standards

To state a claim under § 1983, a plaintiff must allege: (1) the violation of a federal constitutional or statutory right; and (2) that the violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). An individual defendant is not liable on a civil rights claim unless the facts establish the defendant's personal involvement in the constitutional deprivation or a causal connection between the defendant's wrongful conduct and the alleged constitutional deprivation. See Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989); Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978). That is, plaintiff may not sue any official on the theory that the official is liable for the unconstitutional conduct of his or her subordinates. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). In sum, plaintiff must identify the particular person or persons who violated his rights under the United States Constitution or federal law.

Plaintiff claims defendants retaliated against him. "Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)). A viable retaliation claim in the prison context has five elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."

5

Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). If plaintiff intends to assert a retaliation claim, he must specifically identify the protected conduct at issue, name the defendant who took adverse action against him, and plead that the allegedly adverse action was taken "because of" plaintiff's protected conduct.

In his complaint, many of plaintiff's allegations concern prison officials' alleged mishandling of plaintiff's grievances. To the extent plaintiff asserts due process claims based on the conduct of the defendants in responding to inmate grievances or other CDCR forms, such claims fail to state a cognizable due process claim.

The Due Process Clause protects plaintiffs against the deprivation of liberty without the procedural protections to which they are entitled under the law. Wilkinson v. Austin, 545 U.S. 209, 221 (2005). However, prisoners have no stand-alone due process rights related to the administrative grievance process. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). Failing to properly process a grievance does not constitute a due process violation. See, e.g., Wright v. Shannon, 2010 WL 445203, at *5 (E.D. Cal. Feb. 2, 2010) (holding that plaintiff's allegations that prison officials denied or ignored his inmate appeals failed to state a cognizable due process claim); Williams v. Cate, 2009 WL 3789597, at *6 (E.D. Cal. Nov. 10, 2009) ("Plaintiff has no protected liberty interest in the vindication of his administrative claims."). The denial of a prisoner's administrative appeal generally does not cause or contribute to the underlying violation. George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007) (quotation marks omitted). However, prison administrators may not willfully turn a blind eye to constitutional violations being committed by subordinates. Jett v. Penner, 439 F.3d 1091, 1098 (9th Cir. 2006).

While there may be limited circumstances in which those involved in reviewing an inmate appeal may be held liable under § 1983, no such circumstances are presented in plaintiff's original complaint.[5] None of plaintiff's detailed allegations regarding his grievances suggest that

---

[5] A prisoner has no liberty interest in where he is housed. McKune v. Lile, 536 U.S. 24, 39 (2002) (noting that "the decision where to house inmates is at the core of prison administrators' expertise" and that inmates have no protectable interest in remaining at a particular facility); Meacham v. Fano, 427 U.S. 215, 225 (1976) (holding that transfer to a higher security prison

the officials willfully turned a blind eye to federal constitutional violations.[6]

In addition, to the extent plaintiff seeks to impose liability on any of the defendants for failure to comply with institutional rules and state regulations, he fails to state a claim because the mere violation of state regulations is insufficient to establish a constitutional violation. Cousins v. Lockyer, 568 F.3d 1063, 1070 (9th Cir. 2009) ("[S]tate departmental regulations do not establish a federal constitutional violation."). Moreover, "[t]he existence of regulations . . . governing the conduct of prison employees does not necessarily entitle plaintiff to sue civilly to enforce the regulations or to sue for damages based on the violation of the regulations." Vasquez v. Tate, 2012 WL 6738167, at *9 (E.D. Cal. Dec. 28, 2012). The court is unaware of any authority that holds there exists a private right of action available to plaintiff for violation of Title 15 regulations; ample district court decisions hold to the contrary. See, e.g., id.; Davis v. Powell, 901 F. Supp. 2d 1196, 1211 (S.D. Cal. 2012); Meredith v. Overley, 2012 WL 3764029, at *4 (E.D. Cal. Aug. 29, 2012); Parra v. Hernandez, 2009 WL 3818376, at *8 (S.D. Cal. Nov. 13, 2009); Davis v. Kissinger, 2009 WL 256574, at *12 n.4 (E.D. Cal. Feb. 3, 2009), adopted in full,

---

does not implicate a liberty interest); Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995) ("prisoners generally have no constitutionally protected liberty interest in being held at, or remaining at, a given facility"); Olim v. Wakinekona, 461 U.S. 238, 244-48 (1983) (It is well established that inmates do not have a constitutional right to be housed at a particular facility or institution, or to be transferred, or not transferred from one facility or institution to another.) Under such legal authorities, plaintiff has no federal constitutional right to be housed at a fire camp. Also, prisoners have no associational or other constitutional right to hold a paid position in prison. Harris v. Sivley, 951 F.2d 360 (9th Cir. 1991) ("Prisoners have no constitutional right to a prison job."); Williamsun v. Marshall, 1994 WL 377774, at *2 (N.D. Cal. Julyy 5, 1994) (holding "there is no constitutional right to a job in prison," including a MAC work assignment) (citing Hoptowit v. Ray, 682 F.2d 1237, 1254-55 (9th Cir. 1982), overruled on other grounds by Sandin v. Conner, 515 U.S. 472 (1995)).

[6] Moreover, a due process claim is cognizable only if there is a liberty interest at stake. Olim, 461 U.S. at 250; McLean v. Crabtree, 173 F.3d 1176, 1184 (9th Cir. 1999). "[T]he Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison," and a liberty interest in receiving such credits arises only if the State actually has provided for such credits through statute or regulation. Wolff v. McDonnell, 418 U.S. 539, 557 (1974). California has made clear that earning credits "is a privilege, not a right." California Penal Code § 2933(c); see also Kalka v. Vasquez, 867 F.2d 546, 547 (9th Cir. 1989) (in California, there is no protected liberty interest in the accrual of credits); Toussaint v. McCarthy, 801 F.2d 1080, 1094-95 (9th Cir. 1986) (same), abrogated in part on other grounds by Sandin, 515 U.S. at 472.

2009 WL 647350 (Mar. 10, 2009).

In addition, claims of defamation do not rise to the level of a federal constitutional violation. See Paul v. Davis, 424 U.S. 693, 699-701 (1976) (holding defamation is not actionable under § 1983); Hernandez v. Johnson, 833 F.2d 1316, 1319 (9th Cir. 1987) (holding that libel and slander claims are precluded by Paul); Whatley v. Gray, 2018 WL 828200, at *2 (S.D. Cal. Feb. 8, 2018); Sadler v. Dutton, 2017 WL 3217119, at *6 (D. Mont. June 1, 2017), report and recommendation adopted, 2017 WL 3219479 (D. Mont. July 28, 2017).

Plaintiff challenges the disclosure of certain medical information as a violation of his privacy. However, the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), does not provide any private right of action. United States v. Streich, 560 F.3d 926 (9th Cir. 2009); Webb v. Smart Document Solutions, LLC, 499 F.3d 1078, 1081 (9th Cir. 2007) ("HIPAA itself provides no right of action.").

Finally, plaintiff is cautioned that unrelated claims are not properly joined under Federal Rule of Civil Procedure 20(a) concerning joinder of claims and defendants. Rule 20(a) provides that all persons may be joined in one action as defendants if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2).

VI. Proposed Amended Complaint

If plaintiff chooses to submit a proposed amended complaint with his renewed motion to reinstate this action, plaintiff must demonstrate how the conditions about which he complains resulted in a deprivation of plaintiff's constitutional rights. Rizzo v. Goode, 423 U.S. 362, 371 (1976). Also, the amended complaint must allege in specific terms how each named defendant is involved. Id. There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Id.; May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d at 743. Furthermore, vague and conclusory allegations of official participation in civil rights violations are not sufficient. Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

Plaintiff may not change the nature of this action by alleging unrelated claims.[7] See Fed. R. Civ. P. 20(a)(2).

Plaintiff shall use the court's complaint form for any proposed amended complaint.

In addition, plaintiff is informed that the court cannot refer to a prior pleading in order to make plaintiff's amended complaint complete. Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. This requirement exists because, as a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once plaintiff files an amended complaint, the original pleading no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. That said, plaintiff may request that the court append his prior exhibits to his proposed amended complaint and not re-submit them.

Plaintiff is advised that if he is unable to raise claims that are not barred by Heck, or that state a federal cause of action, he is not required to renew his motion to reinstate this action. If plaintiff chooses not to renew his motion to reinstate this action, the action will remain closed.

IV. Orders

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion to reinstate (ECF No. 6) is denied without prejudice;

2. Within thirty days from the date of this order, plaintiff shall complete the attached Notice and submit the following documents to the court:

    a. The completed Notice; and

---

[7] A plaintiff may properly assert multiple claims against a single defendant. Fed. Rule Civ. P. 18. In addition, a plaintiff may join multiple defendants in one action where "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions and occurrences" and "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). Unrelated claims against different defendants must be pursued in separate lawsuits. See George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). This rule is intended "not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees -- for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g)." George, 507 F.3d at 607.

b. An original and one copy of the Amended Complaint. Plaintiff's amended complaint shall comply with the requirements of the Civil Rights Act, the Federal Rules of Civil Procedure, and the Local Rules of Practice. Also, the amended complaint must bear the docket number assigned to this case, be labeled "Amended Complaint," and be filed on the court's complaint form.

3. The Clerk of the Court is directed to send plaintiff the form for filing a civil rights complaint by a prisoner.

Dated: July 2, 2019

*Kendall J. Newman*
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

moor0332.rein

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EUGENE EDWARD MOORE,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>KASHIF ALI, et al.,<br><br>　　　　Defendants. | No. 2:19-cv-0332 KJN P<br><br><br><br>NOTICE |

　　　　Plaintiff hereby submits the following documents in compliance with the court's order filed_____.

　　　　_____　　　　Renewed Motion to Reinstate

　　　　_____　　　　Proposed Amended Complaint

DATED:

　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　Plaintiff